**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-40475

DAVID LEE LEWIS,

Petitioner-Appellant,

VERSUS

JANIE COCKRELL, Director,
Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

Appeal from the United States District Court
For the Eastern District of Texas
6:99-CV-484
July 16, 2002

Before DAVIS, JONES and DeMOSS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.[*]

Lewis, a Texas death sentenced inmate, challenges the district court's denial of his petition for habeas corpus. We affirm.

I.

On November 30, 1986, David Lee Lewis broke into the home of

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

Myrtle Ruby, a seventy-four year-old widow who was attending church choir rehearsal. While Lewis was burglarizing her home, she returned home from rehearsal. They ran into each other in a hallway. Instead of retreating, Lewis shot Ruby with his sawed-off .22 rifle and struck her in the head with the rifle. He stole her car, drove to his uncle's house and parked nearby while Lewis and his uncle went on a hunting trip. The police found the car and arrested Lewis when he returned from the trip. Lewis confessed to the crime.

Lewis was convicted and sentenced to death in 1987, but in 1993 the Texas Court of Criminal Appeals (TCCA) reversed the conviction on direct appeal because part of the record had been lost. He was tried again in 1993 and was once again convicted and sentenced to death. The TCCA affirmed the conviction and sentence on direct appeal in 1995. Lewis petitioned for habeas corpus in state court in 1997, but the TCCA denied relief in 1999. In 1999, he filed a second petition which the court dismissed as an abuse of the writ.

In March 2000, Lewis filed a federal habeas petition in district court. The court granted the State's motion for summary judgment and dismissed his petition. Lewis sought a Certificate of Appealability (COA) for four issues. COA was granted on two issues; he appeals the denial of COA on the remaining two issues.

## II. Application for Certificate of Appealability

Lewis seeks a COA on two claims: (a) his counsel's cross-

2

examination of the State's psychiatric expert on future dangerousness was grossly inadequate; (b) the state court violated his rights to due process by refusing to consider newly discovered evidence that would have established that he was not a future danger to society.

A.   Ineffective Assistance of Counsel

Because of Lewis' confession and other strong corroborating evidence of Lewis' guilt, counsel concentrated his efforts at trial on avoiding the death sentence. Lewis pled guilty. Counsel's strategy was to obtain a negative answer from the jury on the qualifying question of whether Lewis would be a future danger to society. The State called a psychiatric expert, Dr. Quijano, to testify on this issue. Counsel did not engage an expert witness but rather arranged for the testimony of six prison guards familiar with Lewis' conduct during the previous six years of his incarceration. He expected that they would testify that he had been a model prisoner and had not committed any acts of violence against other prisoners or guards during the previous six years. Counsel, however, did not confront Dr. Quijano about this expected testimony and ask him whether such testimony would alter his opinion on whether Lewis would be a future danger to society. Lewis argued in his state habeas petition and before the district court that this failure to confront Dr. Quijano with these facts amounted to ineffective assistance of counsel.

At the state habeas hearing, Lewis' former counsel testified

3

that he made a deliberate decision not to confront the expert with these facts. He testified that he expected that if he had revealed the substance of these witnesses' testimony, Dr. Quijano would have explained that testimony or justified his conclusion in a way that was most favorable to the State "and then I've lost my thunder when the fact witness comes up."

The state habeas court concluded that the decision not to confront the State's expert with the guards' testimony was sound trial strategy. The state court concluded that "counsel engaged in a sound strategy of attempting to build up the defense's credibility with the jury so that the evidence presented would so contradict the State's evidence of future dangerousness that jurors would be forced to conclude the State failed in its burden of proof. In executing this strategy [Lewis'] counsel invoked this court's authority to find a mental health expert and pursued this tactic from voir dire to closing argument."

We are satisfied that the state court's findings and conclusions are reasonable and consistent with Strickland. Lewis has failed to show a substantial denial of a federal right as to this claim.

B. "Newly Discovered Evidence"

Following disposition of his state habeas application, Lewis filed a successive application and raised a single claim that he was deprived of a fair trial under the due process clause because "newly discovered evidence" if known at trial, would have compelled

4

a rational jury to find that Lewis did not constitute a continuing threat to society.  This "newly discovered evidence" claim is based on testimony habeas counsel elicited from Dr. Quijano, the State's psychiatric expert, at the evidentiary hearing during the first state habeas proceeding.  Counsel asked the witness whether his opinion given at trial on Lewis' future dangerousness would be different if based on Lewis' good behavior in prison from 1993 until the 1998 habeas hearing.  The state habeas court sustained the State's objection to this testimony.  In a proffer, however, the witness testified that he would probably not be a danger in prison and that it is not likely he will commit future criminal acts.  The state court denied this newly discovered evidence claim as an abuse of the writ.

The court below properly dismissed this claim based on procedural default.

Contrary to Lewis' argument, the Texas Court of Criminal Appeals dismissed this claim on procedural grounds rather than dismissing it on the merits.  In its dismissal, the Texas Court of Criminal Appeals expressly found that Lewis' subsequent application failed to satisfy Texas Code of Criminal Procedure Art. 11.071, § 5(a), the Texas statute prohibiting subsequent habeas applications. In addition to citing to the relevant statute, the court, in its order of dismissal, provided "the application is dismissed as an abuse of the writ."  This is also abundantly clear from the findings and conclusions of the state trial court which were

5

submitted to the Court of Criminal Appeals. The trial court concluded "the subsequent application for post conviction writ of habeas corpus does not meet the standard contemplated in Article 11.07(1), § 5, Texas Code of Civil Procedure."

As we stated in Barrientes v. Johnson, 221 F.3d 741, 759 (5th Cir. 2000), "Texas abuse of the writ doctrine has, since 1994, provided an adequate state ground for the purpose of imposing a procedural bar." Because the state court's dismissal of this claim was on an independent and adequate state law ground the district court correctly concluded that this claim is procedurally barred and Lewis' application for COA on this claim is denied.[2]

## III.

The district court granted a certificate of appeal on two issues: (a) whether trial counsel was ineffective in arguing an incorrect burden of proof to the jury; and (b) whether the inaccurate testimony of the State's expert witness that there was an 85 percent chance Lewis would be a future danger to society violates Lewis' right to a fair trial.

### A) Ineffective Assistance Claim

This claim relates to counsel's argument to the jury on Special Issue No. 2: "Is there a probability that the defendant,

---

[2] Characterizing this evidence of past-trial conduct as "newly discovered" evidence is flawed from the outset: The evidence could not have been "discovered" before the trial because it did not exist. It is easy to see why the state habeas court excluded this evidence as irrelevant.

6

David Lee Lewis, would commit criminal acts of violence that would constitute a continuing threat to society?

In explaining the court's charge and this interrogatory, counsel argued to the jury that in order to answer this special issue in the affirmative it must conclude beyond a reasonable doubt that the defendant would constitute a continuing threat to society.

Lewis argues that the plain language of the interrogatory only required the jury to find future dangerousness on a probability standard rather than a reasonable doubt standard and that this error undermined counsel's effectiveness with the jury.

We are satisfied that this claim was never raised in state court and is procedurally barred. Although Lewis raised an ineffective assistance of counsel claim on state habeas corpus review, he did not allege this particular ground. Neither did he allege this ground in the federal district court. The district court acknowledged as much when it stated in its memorandum opinion "Lewis did not raise this as a separate sub-claim." The court considered this claim based on facts Lewis mentioned in his reply brief to the director's motion for summary judgment.

Thus, this ground for ineffectiveness of counsel has never been exhausted in state court. This does not require us to remand this claim to state court because if Lewis were to file a successive habeas petition in Texas state court his application would be dismissed as an abuse of the writ under Texas Code of Criminal Procedure Article 11.07(1)§ 5(a). Lewis alleges no

exception or cause that would permit a Texas court to consider this claim.

Additionally, the claim is without merit. Counsel's argument that the jury must find proof beyond a reasonable doubt to support an affirmative answer to Special Issue No. 2 is consistent with the court's jury instruction, which specifically defined "reasonable doubt" and instructed the jury to answer this question in the negative "[i]n the event you have a reasonable doubt as to whether the defendant would commit criminal acts of violence that would constitute a continuing threat to society...." And the burden of proof counsel argued is consistent with state law. *See* Lagrone v. State, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997)(en banc)("Once again, we must refer appellant to a long line of our prior cases holding that the inclusion of the term 'probability' in the future dangerousness special issue of capital trials does not impermissibly soften the required burden of proof in criminal cases.")

We, therefore, agree with the district court that counsel was not deficient in making this argument.

### B. Due Process Claim

Lewis argues next that Dr. Quijano's testimony that Lewis presented an 85 percent probability of committing future acts of dangerousness was false and had a substantial and injurious effect on the outcome of his trial in violation of the due process clause.

8

The district court held that this claim was raised by implication in the state habeas court through his Sixth Amendment ineffective assistance of counsel claim. This conclusion is inconsistent with our recent decision in Wilder v. Cockrell, 274 F.3d 255 (5th Cir. 2001), which holds that a substantive Sixth Amendment claim presented on collateral review was not sufficient to fairly present a related due process claim for exhaustion purposes. As we stated in Wilder, "it is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made." Id. at 259. Furthermore, "where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement." Because this claim is unexhausted and would be subject to dismissal by the Texas habeas court as an abuse of the writ, this claim is procedurally barred.

On the merits, Lewis cannot establish this claim under this Court's case law dealing with claims of false and misleading testimony by experts. To establish a due process violation based on the government's use of false or misleading testimony, the defendant must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false. Fuller v. Johnson, 114 F.3d 491, 496 (5th Cir. 1997), *citing* Giglio v. United

9

*States*, 405 U.S. 150, 153-54, 92 S.Ct. 763, 766 (1972).

Lewis does not meet this standard. First, the testimony at issue - that Lewis presented an 85 percent probability of committing future dangerous acts - was elicited by the defense, not the prosecution. Although the testimony came from the State's expert witness, Dr. Quijano, it was elicited by the defense over protestations from the witness, who cautioned that quantifying future dangerousness was not accurate. The court below pointed out that Dr. Quijano testified that expressing his opinion in terms of a percentage was "a dangerous game," was "very misleading," and that the number was "not precise." R 18 at 18. Most importantly, the jury was aware of the misleading nature of this quantification, and in hearing Dr. Quijano's warnings regarding the unprecise nature of his testimony, knew that his quantification was not intended to mislead.

Lewis also argues that Dr. Quijano's state habeas evidentiary hearing testimony softening his quantification of future dangerousness based on Lewis' post-sentencing behavior in prison from 1993 to 1998 raises "new evidence" that Lewis never was a future danger. Lewis contends that this evidence supports his position that Dr. Quijano's testimony to the contrary is false. But, because Dr. Quijano's state habeas evidentiary hearing testimony relates to Lewis' post-conviction behavior, this information could not have been known by Dr. Quijano, the state or anyone else at the time of trial.

10

IV.

For reasons stated above, we conclude that Lewis failed to demonstrate the denial of a constitutional right on the claims discussed in §§ II A and B above.  A certificate of appealability on those claims is therefore denied.

We also conclude that the district court correctly denied habeas relief on petitioner's <u>Strickland</u> and <u>due process</u> claims discussed above at §§ III A and B.  The district court's judgment on these claims is affirmed.

AFFIRMED.